This is an appeal from the United States Supreme Court. United States District Court for the District of Colorado. Mr. Bradford, you want to reserve only two minutes for rebuttal, is that correct? That's correct. Okay, you may begin. May it please the Court. Good morning, Your Honors. My name is Aaron Bradford. I'm here on behalf of Mr. Wong and Big Time Automotive Parts. With me is Ms. Cindy Pham and Mr. Jablonski on behalf of the appellee. Deferring claim construction and creating divergent standards on anticipation and infringement created an error-filled verdict that wasn't supported by substantial evidence at the time the verdict was entered. Big Time and Mr. Wong respectfully request that this Court reverse Judge Blackburn's denial of our motion, which was a renewed motion, for judgment as a matter of law on anticipation and infringement. Your primary arguments seem to relate to this jury instruction question. Are you saying that there was something more that the trial court, separate and apart from the jury instruction, that the trial court was supposed to do at the claim construction stage? Because I don't really understand exactly what you wanted the court to do, or what you say now you wanted the court to do. Certainly, Your Honor. The instruction that was issued in this case, instruction 11, is the primary instruction that was issued by the court, was issued about 30 minutes before the closing arguments were to be presented to the jury. During the course of the case, Marklin had presented arguments about functionality, initially had asserted an affirmative defense of functionality, and withdrew that or it was not presented at the time of trial. What became of the functionality arguments were that certain elements, certain components of the 780 patent were considered by Marklin to be primarily functional, purely functional. In the jury instruction phase, the jury instruction that was presented by the parties did not include the language that we have concerns about, which states any purely functional features should not be considered in determining infringement. All right. Is that an inaccurate statement? Purely functional? Is that an inaccurate statement? The statement itself is not an inaccurate statement without, but there's a fair number of things that follow that statement under this court's jurisprudence, and Ethicon and this court's jurisprudence, and Apple, the second Apple v. Samsung case, as well as the second Highpoint case, that the purely functional features should be, the ornamental elements of the purely functional features should still be considered. For example... Isn't that what the second sentence in the jury instruction says? The second instruction says you may only consider the ornamental features of the claimed design. Our primary consideration and concern with this instruction, particularly at the time it was presented, was the court had not entered a ruling that there were any functional features of this particular design. Any purely functional features. Purely functional features of this design. The court had actually stricken the expert in advance of trial that was being offered on functionality. The court had not entered a ruling at the time of the claim construction finding that any feature was purely functional. And during trial, there was testimony presented on these two features that Mr. Jablonski identified, that being the location of the LEDs as well as the fact that they were forward facing. The problem with this instruction is it punts to the jury the question of whether or not a functional feature exists. That's primarily and exclusively within the jurisdiction of the district court. So doesn't our case law give the district court a pretty great deal of latitude in terms of what to inform the jury as to what's the proper understanding of the so-called claim and design patents? I disagree, Your Honor. I think that this court's finding in Ethicon, as well as odds on in Apple, what this panel stated in Ethicon was, we have explained, however, that there are a number of claim scope issues which may benefit from a verbal or written guidance, among them the distinction between features of the claim design that are ornamental and those that are purely functional. Yeah, and I understand that quote as being something more like suggestions, guidelines, not mandates, compelling district courts to do a very specific thing under certain circumstances. Sure, sure. The court in odds on, however, stated very clearly where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional features or aspects of the design as shown in the patent. Did odds on issue before our en banc opinion in Egyptian Goddess? Your Honor, I don't have the chronology in my head. It did. So I think Egyptian Goddess, which is en banc, is what controls, and I believe in Egyptian Goddess, our full court really gave a lot of latitude to district courts to try to figure out when is an appropriate time for district courts to actually kind of jump in and come up with some type of verbal formulation as to the scope of a design patent or the meaning of certain aspects of a given design patent. And the language that I'm quoting from odds on was cited in the Apple v. Samsung case last May, which is why I'm quoting it now is because it comes afterwards. It comes from, I believe, several of the members of this panel as well, that in all of these cases there has not been a suggestion that the question of functionality and the question of claim construction should be sent to the jury. There was no direction given to this jury on what is a functional feature under the law of this court. Functionality in the minds of people that are walking the streets is very different from the definition of functionality. Assuming that that was there, is there anything that indicates in the record that the jury relied on that error in reaching its decision? Your Honor, there is. The verdict itself was one product. Actually, it's the same product itself. It's an LED strip. One that's marketed as the head and grill lights, which is about a 36-centimeter LED strip, was found to infringe. And that product was marketed as an ornamental strip that had no function. And actually on the back it said, this product should not be used when the car is in motion. The other product was found to not infringe. It's exactly the same product. You can look at the exhibits that we provided, Exhibits 102, 103, and 104. Exactly the same product, it's just shorter. That product was marketed by Marklin as a daytime running light. And the only distinction that was drawn between that product and the patent was that the bulbs or the LEDs were bright. They functioned such that a non-claimed element, that being its function, was emphasized by Marklin at trial. And the jury found non-infringement of that product. When I'm looking at the exhibits for the head and grill and the LED lights, on the back of the strip for the head and grill, it's clean, right? It's just black all the way through. But for the LED lights backing, you can see those red dots. The red dots, the copper dots. And so, I don't know if this is what the jury hung its hat on, but at least just visually from looking at the two exhibits, you can see some distinction between the look and appearance of the LED lights versus the head and grill lights. Well, problematically, and you're correct, there are four dots at a place where the strip can be cut. The instructions are given to the buyer that if you want to shorten the length of this, that you can cut it between those four dots, which are actually copper connectors. The problem with the actual order that we're appealing from is the district court judge made no factual findings as to why the jury or why it is in support of the verdict found that there was substantial evidence of non-infringement, given the evidence that was before it. I mean, that's not useful for us. We prefer when trial courts will seriously analyze the J-Mall and give us the facts that they felt supported the substantial evidence or supported a substantial evidence finding, but it's not required for our review. We're still supposed to say, is there substantial evidence in the record that would support this jury finding? And we have to give all due deference to a jury determination. And, Your Honors, you're correct. And the record evidence that is before this court on infringement came from Mr. Chang. Mr. Chang testified that a person of ordinary skill, actually just an ordinary observer, would buy these products believing that they are the design patent. In fact, there was no evidence put on, importantly, by Marklin, none given to this panel, of non-infringement. When it comes to design patent infringement, it all comes down to the pictures, right? You're just looking at pretty pictures and comparing them, and it's up to the jury to figure it out. It's up to the jury to figure it out, but, in fact, there is no record evidence of non-infringement. It wasn't disputed at trial. It just wasn't. But the more important thing with this instruction is the fact that the judge created divergent standards on the question of infringement from anticipation. This jury instruction that we're looking at says that the functional features shall not be considered in determining infringement. That means that functional features are now to be considered for purposes of considering anticipation. How do we know that the jury just didn't look at the pictures and not follow the erroneous instruction? We have to assume that the jury did follow the instructions as given, and the instruction quite clearly limits this consideration of functionality to the question of infringement and has now created a standard where we've now identified functional features as a jury. We don't know how we found them because we weren't given direction on that point, but now we must consider them for purposes of anticipation, which we know is incorrect. First of all, the standard set forth in Master Door establishes that the question of infringement and the question of anticipation are identical. The substantial similarity standard is the same that was set forth in Gorham. But in this jury instruction, we now have a situation where the jury is identifying functional features, excluding them. They're not told that they should consider really some portion of those features once excluded. But what they are now doing is they're looking for functional features and considering them in the anticipation analysis, which feeds right into the arguments. I'm not sure how you get there. You're saying that the mere fact that he called out these two sentences in the infringement means that somehow the jury would not think that the same kind of analysis of the design would apply in anticipation? That's precisely the argument that's being made by Marklin, and it's precisely the argument that was made by the judge in denying our motion for a new trial. The judge said, I don't need to worry about Instruction 11 because it doesn't apply to anticipation, and the jury found anticipation. So if this instruction to consider functional features for infringement doesn't apply to anticipation, you have to assume that the jury was going to follow this instruction. The jury created a verdict where it found non-infringement on one side and infringement on another side on the same product. I have just a short time left, and I do want to address the evidence on anticipation. Let me ask you, how did that verdict form come about? Did you guys propose that verdict form? That's the oddest thing I've ever seen. Well, I frankly can't remember back to how that verdict form was proposed, if it was proposed by the judge or by the parties. I don't recall. I didn't see any indication in the record that there was an objection to that verdict form. I would say there was no objection to the verdict form. I think the parties objected to certain claims. How did you not catch that that was a complete misstatement of the law? On the verdict form? Yeah. We did object to the form of the instructions, but as it related to the verdict form, once the objection was overruled, we didn't re-object on the verdict form. What's your response to your friend on the other side who says that, you know, if you want to understand why this confusing or somewhat confusing jury verdict happened, it's because the verdict form forced them to find an infringement before they were allowed to find invalidity. Well, in this particular jurisdiction, it's been my experience that the judge does not differentiate between those. They ask the jury to rule on infringement and make a ruling or a finding on anticipation at the same time. I'm not sure I understand. That's not what the form said. The form said only if you find infringement do you even consider invalidity. And in this case, they found infringement, so they were required to find invalidity. Just very briefly on the question of anticipation, there was not substantial evidence to support anticipation. When this court compares its ruling in Ethicon and in Highpoint Design, Highpoint involved two slippers in the prior art as well as the acclaimed slipper design. The differences between the prior art in that case compared to the prior art in this case are substantial. When we look at the John reference and the Lee reference, the John reference involves a clear lamellar with copper wires running through it, and the 780 patent involves a flexible attachment strip. The John reference specifically excludes and disclaims the use of a flexible attachment strip. In light of Highpoint, there is no way that a reasonable jury, properly instructed, would have found that the John reference anticipates the 780 patent. What about the John flyer, the John product guide, which show a flexible strip with a series of forward-facing LED lights? If you look at the, and for good reason, the jury would not have relied upon that, and the judge did not as well. They were before the jury, weren't they? They were before the jury, but what those flyers demonstrate is at a high level similarities. What this court found in Highpoint and Ethicon is we don't simply look at the product category, the fact that it has LEDs, the fact that it's flexible to determine anticipation. We get down to a lower, a much higher level. Didn't one of your witnesses testify that as long as we have a strip with a series of LEDs, that's encompassed by the design patent claim? That is incorrect. That was stated in a respondent's brief, but that is not the actual testimony that came from Mr. Chen. He testified very clearly that the design patent of the D780 limits the scope of the patent to what is claimed there, which is what is used by Marklin. It is not a claim by us that the patent extends to all LED strips. All right. You've used up your time, and then some. We'll give you one minute for rebuttal. Thank you. May it please the court, my name is James Jablonski. I represent the affiliate Marklin in this case. Why don't we start with that last point? Did you misrepresent the testimony from the other side with respect to the question of how broadly the reach of the design patent is? The reach of the what? The design patent. You said in the red brief that, in fact, the testimony from the other side, Mr. Chen, was that anything essentially that was a running strip, a flexible strip with lights, would infringe this patent. I believe that was their position, yes, although he stopped short when I asked him, how about a castle-shaped LED, and he said no, he didn't think that that would be the case. I asked that question because the LED on my client's product was castle-shaped. Then Mr. Bradford, on reexamination of that witness, kind of backed him away from that testimony. That's what occurred. But the claim of Mr. Wong, the patentee, was very broad. One of the things that is important about this trial is that he never suggested in any way, shape, or form what was ornamental about his design other than that the LEDs were edge-mounted and forward-facing. The jury understood that he did not invent that. This was invented by Jom and was on the market before Mr. Wong even claims that he invented his design. If I could, I'd like to turn to- How do we know Jom invented that? Is that from the- Well, they had a product- The buyer and the product guy? I believe it was 1998. It was a year and a half before the patent application. Actually, it was more than that. But it was more than a year before the patent application. This product was on sale in Europe. Did the jury get to look at the actual product that was sold in Germany? Yes, it did. All we have are these pictures. That's true. I normally wouldn't bring the product to the oral argument. That's fine, yeah. The jury had the product. The jury had the flyer. And the jury had the catalog. I brought the catalog itself. And the jury looked at the entire catalog. They looked at the pages that I excerpted. They looked at a one-page flyer, which I reproduced in my brief. And so they knew that Mr. Wong was not the inventor of this product category, this general design. The jury verdict doesn't inform us which prior art reference the jury ultimately relied upon in finding this design patent anticipated. Well, the judge said in the jury instructions, and I have them here, that he considered the Jom flyer and the Jom catalog to be prior art. And he also considered the Korean reference, about which relatively little has been said. There was a minor error, because in a subsequent instruction, when he told them about anticipation instruction number 16, that they should look at the Jom catalog, flyer, and the utility model, that is the German-type patent. What do you mean, minor error? If he's telling the jury to look at something they shouldn't look at. No, no, no, no, he missed one. He omitted one. All right, let me ask you, as I see the judge on J-Mal, seems to be a little nervous that perhaps his injection of additional sentences into an instruction that had already been agreed upon was a mistake. And that, so he says, his real analysis is, well, that 11 didn't really affect 16 by way of instruction, and they found anticipation, so that's the end of the inquiry. But, I mean, you're talking about a jury instruction that's just a few pages away from the other one. How can you say that the jury wasn't considering both? I think I can say that with confidence, Your Honor, and I'd just like to make that argument if I could, because I think that's the single most important point in this appeal. The instructions with respect to anticipation are 15 and 16. The instruction says, in considering the scope and content of this prior art, you should consider each prior art reference in its entirety as a whole, including portions that would lead away from the invention and suit. There is no suggestion in that instruction about functionality or that any elements should be excluded. And, in fact, my entire case was to argue to the jury that the job reference had a flexible attachment strip, had LEDs mounted on the edge, and the LEDs were forward-facing. Those were the very elements that I also argued were functional. That's part of my problem. Let's begin with the instruction on infringement and put aside the question of whether or not that affects anticipation. And I understand you think that all of this could be irrelevant if we just say the anticipation instruction was fine and it wasn't tainted. Yes. The problem is, is when you look at that instruction, it's arguably correct, the two lines, the two sentences, but it's also arguably misleading. And then you look at it in the context of your closing argument, and you invited them to be completely misled. You actually said in closing argument, if there's anything that serves a functional purpose, you can't even consider it. You have to take it out of your consideration of ornamentality. And that's not the law, is it? If it's a purely functional element, that is the law. If it's purely functional. Yes. If you've got a light bulb with feathers coming out of it. Yes. The ornamental aspect is the feathers. But you don't disregard the light bulb in looking at the overall design just because it has some functionality. I do agree with that, and I never suggested to the jury that they should disregard any ornamental aspect of the forward-facing LED or the edge-mounted LED. I never suggested that. It was open to counsel. I'm looking at your closing argument, and you said, all right, there's all these things that were in the prior act, so what do these really show? They show forward-facing, and they're mounted near the edge. And that's part of what they're claiming is part of the design, right? They are claiming that. And so you said you have to actually take those out of your consideration, and yet that's part of the design. All I meant, Your Honor, was the fact that they were forward-facing or edge-mounted was not in and of itself the ornamental aspect of it. Our contention was that it was functional, and it was. But I want to finish my anticipation argument, if I could, before I run out of time. In Instruction 11, Judge Blackburn said any purely functional feature should not be considered in determining infringement. He never said in any way, shape, or form that functional elements should not be considered in determining anticipation. He never said that. And when you look at Instructions 15 and 16, the word functional does not appear in either one of those instructions. The Supreme Court of the United States two weeks ago rejected the argument that's being made here by Mr. Bradford in this criminal case. I know criminal cases are not cited too often in this court, but in that case, the defendants who had committed this heinous crime in Kansas had gotten an instruction that all aggravating factors during the death penalty phase of their trial had to be proven beyond a reasonable doubt. With respect to mitigating factors, the judge said to the jury, you can consider any mitigating factors that you want. That's all he said. On appeal, the lawyer for the defendants argued that it was implicit that beyond a reasonable doubt standard applied to the mitigating factors. The Supreme Court rejected that. The Supreme Court didn't say in that case that whenever you're looking at jury instructions, you're supposed to take each one individually and not look at them as a whole in light of the arguments presented. I mean, that wouldn't even make any sense. The Supreme Court has over the years many times said you have to look at the instructions as a whole and see if they properly state the law. I don't dispute that. I don't dispute that. But in this case, in instruction number four, to look at all of the instructions, Judge Blackburn said to the jury, defendant contends that two features of the 780 patent, forward-facing and edge-mounted LEDs are functional, and therefore only any ornamental aspect of those features should be considered. In other words, this jury knew and understood that I never contended that if those LEDs were an interesting shape or the spacing was interesting or whatever it was that had an ornamental dimension that the jury could not consider that. In fact, I argued in my closing with respect to infringement that my client's product in terms of the appearance of the LED, the shape, the spacing, and so on was different than the 780 patent. That's the reason why we got a determination of no infringement, because they agreed with me that the design of my client's product was different than the 780 patent. This was an intelligent, capable jury who understood this simple patent. Well, your opposing counsel is saying that the jury instruction, even if we were to conclude is technically not legally inaccurate, nevertheless misled the jury into coming up with an inconsistent verdict where it found one product to infringe and then a very, very, very close brother product to not infringe. Under the law, Mr. Bradford had his opportunity to raise a question about the verdict when it was delivered. The point is that he's trying to say that's where the prejudice lies with this faulty jury instruction, that the jury instruction compelled the jury to come up with this illogical result. That is pure speculation on his part, which he is under the circuit law, he is not entitled to do. He is engaging in speculation that he could have raised when Judge Blackburn read the jury verdict. If he thought it was inconsistent, he could have raised it with the judge. Judge Blackburn did not have to go to the jury and say, why did you do this? Judge Blackburn could have said either one of two things. The court perceives that there's an inconsistency in the infringement finding and I'm going to ask you to reconsider that. If you don't want to change it, don't change it, but you have the opportunity to do that. Or he could have said one of the parties contends that. But Mr. Bradford didn't say word one. And I didn't say anything because I was completely satisfied with the verdict. He has waived any argument that he wants to use here to invite you to engage in speculation. I don't know that the verdict is inconsistent. I can make my speculation as Judge O'Malley suggested, but I don't know that that's the case. The jury may have perceived the distinction between these three products. Did you raise anticipation only as a defense or did you have a request for a declaratory judgment of invalidity? It was a defense. Okay, so you didn't assert invalidity independently? Well, it was raised as an affirmative defense. If the plaintiff had dropped its case, I wouldn't have pursued it separately, but it was a defense to the case, yes. But you didn't cross-appeal the finding by the jury that one of the three products, in fact, infringes? I did not. It's a product that was discontinued. There were very few sales. It was insignificant whether the jury found infringement or not, so we didn't do that. Let me just add that there is ample evidence to support the verdict of anticipation. There is substantial evidence. First of all, all of the jury instructions and the jury verdict were completely accurate. They were agreed to by the plaintiff in the case. If you look at— I forget those two sentences that he added at the last minute. Well, I had raised the issue of functionality, and I had requested that the judge make a claim construction which included that. Mr. Bradford and his predecessor argued against it, saying it was premature and that it was a factual issue. I raised it again in response to their motion for summary judgment, and the judge just ruled—  I will give you my sense of this. Judge Blackburn was uncomfortable finding the facts. This is not a case where he could construe the claim because it was words. Of course, it's a design patent. He hadn't been familiar with this product, and he was listening to the evidence along with the jury and everybody else. He was uncomfortable with the idea that he was going to rule from the bench that these two elements were functional. So he determined, as the judge did in the Black and Decker case that I decided to—the trial judge. He said, this isn't a language for me to construe, and I'm not expert on these products. I'm going to submit it to the jury for consideration, and so he did. He wrote that language himself. Your time is up. Thank you. So this is the real heart of it. We've got a two-step problem. One is you have to convince us that that jury instruction on infringement was error, and then you have to convince us that that jury instruction infected all of the anticipation instructions. Correct. But if we conclude that even if it was error, the anticipation instructions standing alone were an appropriate characterization of the law, then that's the end of the inquiry, right? So to answer that question, yes, you are correct. We have to establish that the instruction was erroneous and that it prejudiced the result, and secondly, we've independently argued that there's not substantial evidence to support the verdict. The instruction itself is erroneous because, one, it does ask the jury to do what the judge's job is. I got that part. So tell me why it infected anticipation. It infected anticipation, as Mr. Jablonski has just argued, because it opened the door to allow the jury to consider functionality when comparing the two designs, the functionality of the John reference and the Lee reference with a 780 patent. The jury is presumed to have followed the instruction that identify these functional features and don't consider them for infringement, and the question of anticipation, you must be then considering these functional features at the time, and that was the exact argument that Mr. Jablonski just made here, which is from a broad design perspective, these are the elements. It's what we said in Ethicon. Look at what the broad design category is in a high point, and here we're doing the same thing. They have LEDs. They are on the side. It is a flexible strip, but when you look at that catalog reference, the catalog reference doesn't give you the ability to actually look at the design. You just see it from a distance, but not actually see how it's designed. But we do get the sense that we're looking at a flexible strip with forward-facing LED lights that are not center-mounted but more edge-mounted, and those are all the basic elements of your rather elemental-looking design. You really can't tell where the LEDs are mounted on the flyers, and so that's why the jury and the court turned to the actual JOM reference, which tells you how it is made, and if you look at what JOM tells us, it is very different. The JOM reference looks different than what could be in these actual products that were advertised, but the jury had those products, and then they looked at them and made the best call they could. In terms of what the jury was allowed to do, they were allowed to compare functional features of the JOM reference with the 780 patent, and that is error. What would you say is Mr. Wong's contribution to the ornamental arts here? What is the ornamental flourish that he has provided the world in advancing the ornamental arts here with this design patent? I think this court has fairly clearly established that we don't have to establish what the artistic addition is to the arts. What Mr. Wong has provided, and Mr. Kiss and Mr. Phillips acknowledged in their testimony, is moving the LEDs from the center of a flexible attachment strip to the edge, and using forward-facing LEDs was the advancement. The prior art featured large chip LEDs center-mount. The reason they were center-mount was a manufacturing reason. Moving them to the edge weakened the strip itself and changed the manufacturing process. That was the advancement over what had been offered in the past, and that's exactly what Mr. Kiss and Mr. Phillips testified was true, that that bucked a trend in the industry. Thank you.